UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20244-CIV-LENARD/GOODMAN

**MARIO ASBUN TELCHI,**

    Plaintiff,

v.

**ISRAEL MILITARY INDUSTRIES, LTD.,**

    Defendant.
_____/

## ORDER GRANTING RENEWED MOTION TO DISMISS COMPLAINT (D.E. 31)

**THIS CAUSE** is before the Court on Defendant Israel Military Industries, Ltd.'s ("IMI") Renewed Motion to Dismiss Complaint, ("Motion," D.E. 31), filed September 19, 2014. Plaintiff Mario Asbun Telchi ("Plaintiff") filed a Response on October 3, 2014, ("Response," D.E. 32), to which IMI filed a Reply on October 30, 2014, ("Reply," D.E. 33). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

**I.**    **Background**

The Complaint alleges that beginning in 1994, Plaintiff, a resident of the Republic of Bolivia, and IMI, an Israeli company, agreed that Plaintiff would work on behalf of IMI to obtain a contract for the purchase of Galil rifles by the Bolivian Ministry of Defense from IMI. (Compl., D.E. 1 ¶ 7.) Plaintiff's principal contact during this time was Mr. Haim Geri, who was IMI's Regional Manager for that part of Latin America.

(Id. ¶ 8.)  Plaintiff successfully obtained the Galil Contract with the Bolivian Ministry of Defense for IMI to provide 10,000 Galil rifles at a cost of $1,178.00 per unit.  (Id. ¶ 9.)

Beginning in 1999, the Republic of Bolivia initiated a criminal investigation into the Galil Contract.  (Id. ¶ 12.)  IMI refused to comply with the investigation or cooperate with the Bolivian officials in regards to the criminal investigation.  (Id. ¶ 13.)  Unable to obtain information from IMI with respect to the ongoing investigation, the Bolivian Attorney General placed the burden of defending IMI on Plaintiff.  (Id. ¶ 15.)  According to the Complaint, beginning in 1999, Plaintiff expended substantial sums defending IMI with respect to the criminal investigation.  (Id.)  Although IMI refused to take part in the investigation, it recognized Plaintiff's extraordinary expenses and stated that he would be compensated for them out of funds related to a separate military contract IMI was developing with Bolivia ("Maintenance Center Project" or "MCP").  (Id. ¶ 14, 15.)  At the direction of IMI, Plaintiff also expended significant sums pursuing the MCP, and in 2002, the Republic of Bolivia accepted IMI's proposal for the MCP.  (Id. ¶ 17.)

In 2007, Plaintiff traveled to Israel to meet with IMI and discuss his expenditures with respect to the defense of IMI under the criminal investigation of the Galil Contract, and the advance expenditures relating to the MCP.  (Id. ¶ 19.)  According to the Complaint, IMI advised Plaintiff that it intended to proceed with the MCP, and intended to reimburse Plaintiff for his MCP-related expenses as well as the expenses incurred defending IMI in the criminal investigation of the Galil Contract.  (Id.)

In 2008, the State of Israel broke diplomatic relations with the Republic of Bolivia and all further discussions with IMI ceased.  (Id. ¶ 21.)  IMI has not answered any of

Plaintiff's subsequent demands for reimbursement of the amounts expended by him for the defense of IMI under the Galil Contract and in pursuit of the MCP.  (Id. ¶ 22.) Plaintiff alleges that he has incurred approximately $10 million in extraordinary expenses related to defending IMI on the Galil Contract and in pursuit of the MCP.  (Id. ¶ 23.)

On September 6, 2013, Plaintiff filed a Complaint against IMI in Florida state court alleging breach of contract and breach of the duty of good faith.  (Id. ¶¶ 25-38.) The Complaint alleges that the state court had personal jurisdiction over IMI pursuant to Section 48.193(1)(a),[1] Florida Statutes, "where IMI, through its agent, operated, conducted, engaged in, and carried on a business or business venture in the State of Florida, and the causes of action enumerated herein arise from the doing of such acts." (Id. ¶ 4.)  It further alleged that the state court had personal jurisdiction over IMI pursuant to Section 48.193(2),[2] Florida Statutes, "where IMI is engaged in substantial, and not isolated, activity within the State of Florida."  (Id.)

On January 21, 2014, IMI removed the case to this Court pursuant to 28 U.S.C. § 1441(d), which provides for the removal of "[a]ny civil action brought in a State court against a foreign state as defined in" 28 U.S.C. § 1603(a).  (See Notice of Removal, D.E. 1 at 2.)  Section 1603 defines "foreign state" to include an "agency or instrumentality of a foreign state," which includes any entity "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof[.]"  28 U.S.C. § 1603(a) & (b)(2).  It is

---

[1]   The Complaint erroneously cites to Section 48.103, which does not exist.

[2]   The Complaint again erroneously cites to Section 48.103, which does not exist.

3

undisputed that IMI is a limited liability company wholly owned by the State of Israel. (See Notice of Removal at 2.)

On February 24, 2014, IMI moved to dismiss the Complaint for, inter alia, lack of personal and subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, et seq. (D.E. 10.) On April 21, 2014, the Court stayed discovery pending the Court's ruling on the Motion to Dismiss and granted the Parties until July 1, 2014 to conduct limited jurisdictional discovery. (D.E. 21.) On July 1, 2014, the Court extended the jurisdictional discovery deadline to August 8, 2014. (D.E. 26.) It also denied Defendant's Motion to Dismiss without prejudice to moving for dismissal after jurisdictional discovery was completed. (Id.)

The jurisdictional discovery revealed that IMI has never had any office in the United States. (See Decl. of Reuven Wolfe ("Wolfe Decl."), D.E. 31-1) ¶ 3.) Two IMI subsidiaries—IMI Services USA and IMI Trading USA—have offices in Maryland and New York, respectively. (Id. ¶¶ 4-5.)

In 1989, Haim Geri became an employee of IMI and worked in IMI's regional offices in Bogota, Colombia for six years—first as a Technician and deputy manager and later as a Regional Manager for part of Latin America, including Bolivia. (See Decl. of Haim Geri ("Geri Decl."), D.E. 31-2 ¶ 2.) In 1995, Geri became an employee of IMI Services USA and moved to Miami, Florida, where he worked from his home. (Id. ¶ 3.)[3]

---

[3] See also Letter from Nissim Mor, IMI's Vice President of Marketing, to U.S. Department of Justice, D.E. 31-3 at 3 (Oct. 5, 1997) (noting that Haim "was employed" by IMI until 1995 when he was hired "by a U.S. subsidiary of IMI named IMI SERVICES USA Inc."); Employment Extension, D.E. 31-3 at 5 (Dec. 17, 1997).

In the late 1990s, Geri was engaged as a consultant for IMI through a corporation that he owned; he continued to serve as a consultant for the time period relevant to Plaintiff's claims.  (Id. ¶ 4.)

Geri averred that the Miami address Plaintiff refers to in Paragraph 8 of his Complaint was not an IMI office, but was instead the office of the corporation that Geri owned.[4]  (Id. ¶ 6.)  Geri further stated that between 1995 and 2007, after he had left employment at IMI, he met with Plaintiff in Miami on five to ten occasions.  (Id. ¶ 9.)  "None of those meetings was exclusively for the purpose of discussing any business having to do with IMI's dealings with Plaintiff, [Plaintiff's company Almances La Orquidea, or "ALO"], or the Bolivian government."  (Id.)  Each time Geri met with Plaintiff in Miami, Plaintiff had traveled to Miami "for personal reasons or in connection with his other businesses.  Any discussions regarding Bolivia that occurred during these meetings were incidental."  (Id.)  When ALO and IMI entered into a written contract in 1998, it was signed on IMI's behalf by IMI employee Amiram Maor in Israel.  (Id. ¶ 10.)

Beginning in 1999, Geri's Latin America-related activities for IMI were conducted through IMI's Bogota, Columbia office.  (See D.E. 31-3 at 8.)  Accordingly, IMI prohibited correspondence with Geri in Miami, and required all correspondence with Geri to be conducted via email or fax to the Bogota office.  (Id.)

---

[4] Paragraph 8 of the Complaint states: "At all times relevant to this Complaint, Mr. Asbun's principal contact within IMI was Mr. Haim Geri, Regional Manager for IMI, who maintained an office at 5201 Blue Lagoon Drive, Suite 970, Miami, Florida 33126. Mr. Asbun met with Mr. Geri in Miami on at least six occasions throughout the time period relevant to this Complaint." (D.E. 1.)

5

Plaintiff conceded that the quotes, proposals, contract negotiation, and contract execution related to his work for IMI in Bolivia occurred in Israel.  (Telchi Dep., D.E. 31-4 at 20:15-17; 70:8-15.)  He further stated that the products that he sold on behalf of IMI were produced in Israel and travelled through airfreight from Tel Aviv to La Paz, Bolivia.  (Id. at 23:20-22.)  Additionally, Plaintiff acknowledged that the negotiations for the Galil Contract were conducted by multiple IMI employees in Israel who traveled to Bolivia to negotiate the agreement with the Bolivian government.  (Id. at 28:17-29:18, 30:8-14.)  The only place Plaintiff travelled in relation to the negotiation of the Galil Contract was Israel.  (Id. at 30:15-25.)  The Galil Contract was ultimately signed in Bolivia by Amiram Maor, from Israel.  (Id. at 45:19-25.)

On September 19, 2014, Defendant filed the instant Renewed Motion to Dismiss Complaint.  (D.E. 31.)  The Motion argues that dismissal is required: (1) under Rule 12(b)(3) for improper venue pursuant to a forum selection clause in the Parties' contract that provides for exclusive jurisdiction in Israel; (2) under Rule 12(b)(1) for lack of subject matter jurisdiction pursuant to the FSIA; (3) under Rule 12(b)(2) for lack of personal jurisdiction pursuant to the FSIA and Fifth and Fourteenth Amendments; and (4) for forum non conveniens.  (Id.)  For reasons discussed below, the Court agrees that it does not have personal jurisdiction over IMI and will limit its discussion to that issue.[5]

---

[5] In doing so, the Court makes no finding with respect to Defendant's other bases for dismissal.

## II. Legal Standard

When deciding the issue of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a court must conduct a two-part inquiry. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).

> First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. [Second, i]f the requirements of the long-arm statute are satisfied, then the court must inquire as to, (1) whether defendant has established sufficient minimum contacts with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend traditional notions of fair play and substantial justice.

Id. (citations and internal quotation marks omitted). The procedure for establishing and challenging personal jurisdiction is as follows:

> First, the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

Id. (citation and internal quotation marks omitted). Allegations in the complaint are accepted as true to the extent they are uncontroverted by defendant's non-conclusory affidavits or deposition testimony. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Where there is conflict between the parties' affidavits and deposition testimony, all reasonable inferences are drawn in favor of the plaintiff. Id. Ultimately, the plaintiff bears the burden of proving personal jurisdiction. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996).

### III. Analysis

Florida's long-arm statute provides for two types of personal jurisdiction: (1) specific jurisdiction under Section 48.193(1), where a party's contacts with Florida relate to the cause of action and (2) general jurisdiction under Section 48.193(2), where a party's contacts are unrelated to the litigation, but nonetheless constitute "substantial and not isolated activity within [Florida]." The Complaint alleges that personal jurisdiction exists under both sections. (See D.E. 1.)

#### a. Specific Jurisdiction

The Complaint alleges that IMI is subject to specific jurisdiction in Florida pursuant to Section 48.193(1)(a),[6] Florida Statutes, "where IMI, through its agent, operated, conducted, engaged in, and carried on a business or business venture in the State of Florida, and the causes of action enumerated herein arise from the doing of such acts." (Compl. ¶ 4.) IMI disagrees and argues that "this dispute relates solely to parties located, and acts or omissions that occurred, entirely outside of this forum." (Reply at 9.) It further argues that, as a matter of due process, "IMI could not have 'fair warning' that entering into a contract (i) with a Bolivian entity (ii) for negotiation of a deal in Bolivia

---

[6] As mentioned in Note 1, supra, the Complaint erroneously cited to Section 48.103, which does not exist. Section 48.193(1)(a) provides, in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

8

(iii) with the Bolivian government (iv) that did not require performance in the United States would somehow subject it to the jurisdiction of a court in Florida." (Mot. at 14.)

Although Plaintiff's Response quotes Section 48.193(1)(a), he makes no argument thereunder. (See Resp. at 13-14.) Rather, Plaintiff devotes his entire argument to attempting to demonstrate why the Court may exercise general jurisdiction over IMI under Section 48.193(2). (See id. at 14.) Accordingly, the Court finds that Plaintiff has failed to carry his burden of proving that the Court has specific jurisdiction over Defendant. Sculptchair, 94 F.3d at 627.

      **b.    General jurisdiction**

Pursuant to Section 48.193(2), Florida Statutes, a defendant is subject to the Court's "general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida[.]" Carmouche v. Tamborlee Mgmt., 789 F.3d 1201, 1204 (11th Cir. 2015). The U.S. Supreme Court recently held that a federal district court sitting in diversity may assert general personal jurisdiction over a foreign corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" Daimler AG v. Bauman, __ U.S. __, 134 S. Ct. 746, 751 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. __, 131 S. Ct. 2846, 2851 (2011)); see also Carmouche, 789 F.3d at 1204 ("'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations,' without offending due process 'when their affiliations with the State are so 'continuous and

9

systematic' as to render them essentially at home in the forum State.'") (quoting Goodyear, 131 S. Ct. at 2851). The mere existence of a corporation's subsidiary or affiliate in the forum jurisdiction is insufficient to establish general jurisdiction. Daimler, 134 S. Ct. 759-60 (rejecting the Ninth Circuit's view that a foreign corporation is subject to general jurisdiction whenever they have an in-state subsidiary or affiliate) (citing Goodyear, 131 S. Ct. at 2856). Stated differently, "general jurisdiction requires affiliations 'so 'continuous and systematic' as to render [the foreign corporation]' . . . comparable to a domestic enterprise in that State." Id. at 758 n.11 (quoting Goodyear, 131 S. Ct. at 2851).

IMI argues that "rather than being 'comparable to a domestic enterprise,' IMI is an Israeli corporation that does not maintain an office in the United States, and conducts its business primarily from Israel." (Mot. at 15.) It argues that "[t]he fact that Mr. Geri maintained a residence in Miami while employed by IMI Services USA and while working for IMI as a consultant is insufficient to bring IMI within this Court's general jurisdiction." (Id.) The Court agrees.

IMI is an Israeli corporation with its principal place of business in Ramat Hasharon, Israel. (Wolfe Decl. ¶ 3.) "IMI has never had, during the periods relevant to this claim, and does not now have, any office in the United States." (Id.)

It appears that the only contacts IMI had with the United States during the relevant period was that Geri—who "was engaged as a consultant for IMI through a coproation that [he] owned," (Geri Decl. ¶ 4)—lived and sometimes worked from his home in Miami. (Geri Decl. ¶ 3.) However, beginning in 1999—the relevant start date for

10

Plaintiffs' claims—Geri's Latin America-related activities for IMI were conducted through IMI's Bogota, Columbia office. (See D.E. 31-3 at 8.) In fact, IMI prohibited correspondence with Geri in Miami and required all correspondence with Geri to run through the Bogota office. (See id.) Indeed, even when Plaintiff lived in Miami he was very rarely working from there; rather, Miami was chosen because Miami International Airport had the best international connections. (Geri Dep. at 12:21-13:3.) He testified that "most of the weeks, Monday I would fly somewhere and Friday I will come back, rest here [in Miami] the weekend and then fly again. . . . [IMI] didn't want me to stay here because the purpose of me being here is to be on the airplane and on the field [in Latin America] all the time." (Id. at 15:7-13.)

Moreover, although Plaintiff met with Geri in Miami on a handful of occasions,[7] none of those meetings were exclusively "for the purpose of discussing any business having to do with IMI's dealings with Plaintiff, ALO or the Bolivian government." (Geri Decl. ¶ 9.) Each time Plaintiff and Geri met in Miami, Plaintiff "had travelled to Miami for personal reasons or in connection with his other businesses. Any discussions regarding Bolivia that occurred during these meetings were incidental." (Id.)

The Court finds that Plaintiff has failed to establish that IMI is subject to general jurisdiction in Florida. The fact that Geri maintained a residence in Miami while employed by IMI Services USA and while working for IMI as a consultant through a

---

[7] Although the Complaint alleges that Plaintiff met with Geri in Miami on "at least six occasions," (Compl. ¶ 8), Geri could not recall how many times he spoke with Plaintiff in Miami, (Geri Dep. at 22:6-23:18.) In his Declaration, Geri estimated that he met with Plaintiff in Miami between five and ten times. (Geri Decl. ¶ 9.)

11

business he owned does not render IMI's contacts with Florida so continuous and systematic as to render IMI "comparable to a domestic enterprise in that State." Daimler, 134 S. Ct. at 758 n.11 (citing Goodyear, 131 S. Ct. at 2851). Thus, personal jurisdiction over IMI does not exist under Florida's long-arm statute or the Due Process Clause. See Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010) (noting that general jurisdiction under Florida's long-arm statute is coextensive with limits imposed by the Due Process Clause of the Fourteenth Amendment).

IV. **Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant Israel Military Industries, Ltd.'s Renewed Motion to Dismiss Complaint (D.E. 31), filed September 19, 2014, is **GRANTED**;

2. This case is **DISMISSED WITH PREJUDICE** for lack of personal jurisdiction;

3. All pending motions are **DENIED AS MOOT**; and

4. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of October, 2015.

                                                                   **JOAN A. LENARD**
                                                                   **UNITED STATES DISTRICT JUDGE**