UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20244-CIV-LENARD/GOODMAN

**MARIO ASBUN TELCHI,**

    Plaintiff,

v.

**ISRAEL MILITARY INDUSTRIES, LTD.,**

    Defendant.
_____/

### ORDER DENYING PLAINTIFF MARIO ASBUN TELCHI'S MOTION FOR RELIEF FROM COURT'S ORDER GRANTING RENEWED MOTION TO DISMISS COMPLAINT (D.E. 44)

**THIS CAUSE** is before the Court on Plaintiff Mario Asbun Telchi's Motion for Relief from the Court's Order Granting Renewed Motion to Dismiss Complaint, ("Motion," D.E. 44), filed November 13, 2015. Defendant Israel Military Industries, Ltd. ("IMI") filed a Response on November 30, 2015, ("Response," D.E. 46), to which Plaintiff filed a Reply on December 10, 2015, ("Reply," D.E. 47). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

**I.  Background**

Plaintiff is a resident of Bolivia. (Compl. (D.E. 1 at 9-17) ¶ 1.) IMI is a limited liability company wholly owned by the State of Israel. (See Notice of Removal at 2.) Beginning in 1994, Plaintiff began working on behalf of IMI to obtain a contract for the purchase of Galil rifles by the Bolivian Ministry of Defense from IMI. (Compl. ¶ 7.) Plaintiff successfully pursued and obtained the Galil Contract with the Bolivian Ministry

of Defense for IMI to provide 10,000 Galil rifles at a cost of $1,178.00 per unit.  (Id. ¶ 9.)  In 1999, the Bolivian government opened a criminal investigation regarding the Galil Contract which Plaintiff was required to defend on IMI's behalf.  (Id. ¶¶ 12-13, 15.)  Several years later, Plaintiff worked on behalf of IMI on a separate military contract IMI was developing with Bolivia (the "Maintenance Center Project" or "MCP").  (Id. ¶¶ 14, 15.)  Plaintiff incurred significant expenses related to both the Galil Contract defense and MCP project for which IMI never compensated or reimbursed him.  (Id. ¶ 19.)

On September 6, 2013, Plaintiff filed a Complaint against IMI in Florida state court alleging breach of contract and breach of the duty of good faith.  (Compl. ¶¶ 25-38.)  The Complaint alleges that the state court had "specific" personal jurisdiction over IMI pursuant to Section 48.193(1)(a),[1] Florida Statutes, "where IMI, through its agent, operated, conducted, engaged in, and carried on a business or business venture in the State of Florida, and the causes of action enumerated herein arise from the doing of such acts."  (Id. ¶ 4.)  It further alleged that the state court had "general" personal jurisdiction over IMI pursuant to Section 48.193(2),[2] Florida Statutes, "where IMI is engaged in substantial, and not isolated, activity within the State of Florida."  (Id.)

On January 21, 2014, IMI removed the case to this Court pursuant to the Foreign Sovereign Immunities Act ("FSIA"), which provides for the removal of "[a]ny civil action brought in a State court against a foreign state as defined in [28 U.S.C. §] 1603(a)[.]"  28 U.S.C. § 1441(d).  (See Notice of Removal, D.E. 1 at 2.)  Section 1603

---

[1]  The Complaint erroneously cites to Section 48.103, which does not exist.

[2]  The Complaint again erroneously cites to Section 48.103, which does not exist.

2

defines "foreign state" to include an "agency or instrumentality of a foreign state," which includes any entity "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof[.]"  28 U.S.C. § 1603(a) & (b)(2).

On February 24, 2014, IMI moved to dismiss the Complaint for, inter alia, lack of personal and subject matter jurisdiction under the FSIA, 28 U.S.C. § 1602, et seq.  (D.E. 10.)  The Court denied the motion to dismiss without prejudice and permitted the Parties to engage in jurisdictional discovery.  (D.E. 21, 26.)

> The jurisdictional discovery revealed that IMI has never had any office in the United States.  (See Decl. of Reuven Wolfe ("Wolfe Decl."), D.E. 31-1) ¶ 3.)  Two IMI subsidiaries—IMI Services USA and IMI Trading USA—have offices in Maryland and New York, respectively.  (Id. ¶¶ 4-5.)
>
> In 1989, Haim Geri became an employee of IMI and worked in IMI's regional offices in Bogota, Colombia for six years—first as a Technician and deputy manager and later as a Regional Manager for part of Latin America, including Bolivia.  (See Decl. of Haim Geri ("Geri Decl."), D.E. 31-2 ¶ 2.)  In 1995, Geri became an employee of IMI Services USA and moved to Miami, Florida, where he worked from his home.  (Id. ¶ 3.)[3]  In the late 1990s, Geri was engaged as a consultant for IMI through a corporation that he owned; he continued to serve as a consultant for the time period relevant to Plaintiff's claims.  (Id. ¶ 4.)
>
> Geri averred that the Miami address Plaintiff refers to in Paragraph 8 of his Complaint was not an IMI office, but was instead the office of the corporation that Geri owned.[4]  (Id. ¶ 6.)  Geri further stated that between

---

[3] See also Letter from Nissim Mor, IMI's Vice President of Marketing, to U.S. Department of Justice, D.E. 31-3 at 3 (Oct. 5, 1997) (noting that Haim "was employed" by IMI until 1995 when he was hired "by a U.S. subsidiary of IMI named IMI SERVICES USA Inc."); Employment Extension, D.E. 31-3 at 5 (Dec. 17, 1997).

[4] Paragraph 8 of the Complaint states: "At all times relevant to this Complaint, Mr. Asbun's principal contact within IMI was Mr. Haim Geri, Regional Manager for IMI, who maintained an office at 5201 Blue Lagoon Drive, Suite 970, Miami, Florida 33126.  Mr. Asbun

>1995 and 2007, after he had left employment at IMI, he met with Plaintiff in Miami on five to ten occasions. (Id. ¶ 9.) "None of those meetings was exclusively for the purpose of discussing any business having to do with IMI's dealings with Plaintiff, [Plaintiff's company Almances La Orquidea, or "ALO"], or the Bolivian government." (Id.) Each time Geri met with Plaintiff in Miami, Plaintiff had traveled to Miami "for personal reasons or in connection with his other businesses. Any discussions regarding Bolivia that occurred during these meetings were incidental." (Id.) When ALO and IMI entered into a written contract in 1998, it was signed on IMI's behalf by IMI employee Amiram Maor in Israel. (Id. ¶ 10.)
>
>Beginning in 1999, Geri's Latin America-related activities for IMI were conducted through IMI's Bogota, Colombia office. (See D.E. 31-3 at 8.) Accordingly, IMI prohibited correspondence with Geri in Miami, and required all correspondence with Geri to be conducted via email or fax to the Bogota office. (Id.)
>
>Plaintiff conceded that the quotes, proposals, contract negotiation, and contract execution related to his work for IMI in Bolivia occurred in Israel. (Telchi Dep., D.E. 31-4 at 20:15-17; 70:8-15.) He further stated that the products that he sold on behalf of IMI were produced in Israel and travelled through airfreight from Tel Aviv to La Paz, Bolivia. (Id. at 23:20-22.) Additionally, Plaintiff acknowledged that the negotiations for the Galil Contract were conducted by multiple IMI employees in Israel who traveled to Bolivia to negotiate the agreement with the Bolivian government. (Id. at 28:17-29:18, 30:8-14.) The only place Plaintiff travelled in relation to the negotiation of the Galil Contract was Israel. (Id. at 30:15-25.) The Galil Contract was ultimately signed in Bolivia by Amiram Maor, from Israel. (Id. at 45:19-25.)

("Dismissal Order," D.E. 43 at 4-6.)

On September 19, 2014, Defendant file a Renewed Motion to Dismiss in which it argued for dismissal: (1) under Rule 12(b)(3) for improper venue pursuant to a forum selection clause in the Parties' contract that provides for exclusive jurisdiction in Israel; (2) under Rule 12(b)(1) for lack of subject matter jurisdiction pursuant to the FSIA; (3)

---

met with Mr. Geri in Miami on at least six occasions throughout the time period relevant to this Complaint." (D.E. 1.)

under Rule 12(b)(2) for lack of personal jurisdiction pursuant to the FSIA and Fifth and Fourteenth Amendments; and (4) for forum non conveniens.  (D.E. 31.)

On October 29, 2015, the Court granted the Motion on the grounds that it did not have personal jurisdiction over IMI, and declined to address the other issues.  (Dismissal Order, D.E. 6, 12 & n.5.)  Specifically, the Court found that: (1) Plaintiff had failed to argue (and therefore failed to carry his burden of proving) that the Court had "specific" jurisdiction over IMI under Fla. Stat. § 48.193(1), (id. at 9); and (2) IMI was not subject to general jurisdiction under Fla. Stat. § 48.193(2) because its contacts with Florida are not so continuous and systematic as to render IMI "comparable to a domestic enterprise in that State[,]" (id. at 11-12 (quoting Daimler AG v. Bauman, __ U.S. __, 134 S. Ct. 746, 751 (2014)).

On November 13, 2015, Plaintiff filed the instant Motion under Rule 60(b)(1), seeking relief from the Court's Order.  (D.E. 44.)  He argues that relief is warranted for two reasons: (1) the Court failed to consider his argument regarding the Court's exercise of specific jurisdiction over IMI; and (2) the Court made a mistake of fact regarding its consideration of general jurisdiction.  (Id. at 3-7.)

**II.     Legal Standard**

Federal Rule of Civil Procedure 60(b)(1) provides that a court may relieve a party from a final judgment or order on the grounds of "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1).  "Relief is available under Rule 60(b)(1) for mistakes of law or its application, Parks v. U.S. Life and Credit Corp., 677 F.2d 838, 839–40 (11th Cir. 1982), but typically the district court is not required to grant relief

5

unless the legal error is obvious." Chambers v. Fla. Parole Comm'n, 257 F. App'x 258, 259 (11th Cir. 2007).

> The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Z.K. Marine Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992). In particular, there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. See Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc., 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999); See also Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994). In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Sussman, 153 F.R.D. at 694. A "motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." Z.K. Marine Inc., 808 F. Supp. at 1563. Instead, a motion for reconsideration is appropriate where the "Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension . . . . Such problems rarely arise and the motion to reconsider should be equally rare." Z.K. Marine Inc., 808 F. Supp. at 1563 (citing Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983); Moog, Inc. v. United States, No. 90–215E, 1991 WL 255371, at *1, 1991 U.S. Dist. Lexis 17348, at *2 (W.D.N.Y. Nov. 21, 1991)).

Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). "Furthermore, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." Id. (citing Mannings v. Sch. Bd. of Hillsborough Cnty., 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "For reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions." Id. (citing Sussman, 153 F.R.D. at 694).

### III. Discussion

First, although not one of Plaintiff's grounds for relief, the Court acknowledges that it made a mistake in analyzing the personal jurisdiction issue under Florida's long-arm statute, Fla. Stat. § 48.193(1) and (2). Although the Complaint alleged personal jurisdiction under Florida's long-arm statute, IMI moved to dismiss for lack of personal jurisdiction pursuant to the FSIA and the Fifth and Fourteenth Amendments to the U.S. Constitution. (See D.E. 31 at 13.) As the Eleventh Circuit has noted, "[t]he FSIA contains its own long-arm statute for obtaining personal jurisdiction over foreign states." Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1553 (11th Cir. 1993). Under 28 U.S.C. § 1330(b), "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction under [28 U.S.C. § 1330(a)] where service has been made under [28 U.S.C. § 1608.]" "Neither compliance with the forum state's long-arm statute nor minimum contacts between the defendant and the forum state are required." Vermeulen, 985 F.2d at 1553 (citations omitted). Thus, the Court mistakenly dismissed Plaintiff's claims against IMI for lack of personal jurisdiction on the ground that no such jurisdiction existed under Florida's long-arm statute. See id. (holding that the district court erred in dismissing the Plaintiff's claims for lack of personal jurisdiction under Georgia's long-arm statute).

However, this mistake does not necessarily entitle Plaintiff to relief. Plaintiff still must establish that the Court may exercise personal jurisdiction over IMI. See S & Davis Int'l, Inc. v. The Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000) (noting that

under the FSIA, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant") (quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1999)).

The FSIA generally immunizes a foreign state or instrumentality from the jurisdiction of the United States Courts. 28 U.S.C. § 1604. This general rule is subject to certain exceptions. See 28 U.S.C. § 1605. The exception Plaintiff invoked is the "commercial activity" exception which provides that a foreign state is not immune from the jurisdiction of the United States courts in any case

> in which [(1)] the action is based upon a commercial activity carried on in the United States by the foreign state; or [(2)] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [(3)] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605. The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act," and states that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The Supreme Court has explained that "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce[.]'" Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) (quoting Black's Law Dictionary 270 (6th ed. 1990)).

If the "commercial activity" exception applies, a foreign state or instrumentality is not immune from suit under the FSIA, and federal district courts have subject matter

jurisdiction over the claims. 28 U.S.C. § 1330(a). And, if the Court has subject matter jurisdiction over the claims under Section 1330(a), it necessarily has personal jurisdiction over the defendant under Section 1330(b) (so long as service has been made under 28 U.S.C. § 1608). 28 U.S.C. § 1330(b). As the Second Circuit puts it: "In general, 'subject matter jurisdiction plus service of process equals personal jurisdiction' under the FSIA."[5]

---

[5] Under this framework the concepts of "general" and "specific" personal jurisdiction are not necessarily applicable. See Abelesz v. Magyar Nemzeti Bank, 692 F.3d 661, 694 (7th Cir. 2012) ("[T]he 'commercial activity' inquiry under the FSIA is not congruent with a general personal jurisdiction inquiry. . . The FSIA requires only that a sovereign defendant be engaged in 'commercial activity in the United States'"). However, the Eleventh Circuit has analyzed "specific" personal jurisdiction under the FSIA where the plaintiff invoked the third clause of Section 1605, arguing that the defendant's commercial activity had a "direct effect" in the United States. Vermeulen, 985 F.2d at 1545-46 (noting that in Republic of Argentina, the Supreme Court "acknowledged that the 'direct effect' element of section 1605(a)(2) might be construed as embodying the 'minimum contacts' test of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)"). Here, Plaintiff invokes the second clause of Section 1605, arguing that the defendant engaged in commercial activity "performed in the United States in connection with a commercial activity of the foreign state elsewhere[.]" 28 U.S.C. § 1605. It is unclear whether the specific personal jurisdiction analysis is applicable to this argument, but even if it is, the Court finds that for the reasons discussed infra, IMI is not subject to specific personal jurisdiction in the United States. See id. at 1545 ("The relevant forum when a case is brought under the FSIA is the United States.").

It is also unclear whether interests of Due Process are involved in analyzing whether a foreign state or instrumentality is subject to personal jurisdiction under the FSIA. See Abelesz, 692 F.3d at 694 (agreeing with the Second and D.C. Circuits that under the FSIA "foreign states are not 'persons' entitled to rights under the Due Process Clause"). In Republic of Argentina, the Supreme Court "assumed that the Due Process Clause confines the exercise of jurisdiction against foreign states and found that Argentina possessed minimum contacts that would satisfy the constitutional test." Vermeulen, 985 F.2d at 1545 (citing Republic of Argentina, 504 U.S. at 619-20. In Vermeulen, the Eleventh Circuit did the same with regard to a corporation wholly owned by the French Government. See id. In S & Davis International v. The Republic of Yemen, the Eleventh Circuit again skirted the issue by finding that the due process requirements, assuming they did apply, had been met. 218 F.3d 1292, 1303-04 (11th Cir. 2000).

Here, the Court finds that for the reasons discussed infra, assuming due process requirements do apply under the facts of this case, they have not been met. Quite simply, IMI does not have the requisite "minimum contacts" with the United States, and the exercise of jurisdiction here would not comport with "'traditional notions of fair play and substantial justice.'" Vermeulen, 985 F.2d at 1545 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). There is no evidence from which the Court could conclude that IMI purposefully availed itself of the laws of the United States with regard to its dealings with

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 151 (2d Cir. 2001) (quoting Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria, 647 F.2d 300, 308 (2d Cir. 1981)).

Thus, the Court must determine whether IMI was conducting a "commercial activity" under 28 U.S.C. § 1605.  Plaintiff invokes the second clause of that statute, arguing that Haim Geri performed an act or acts "in the United States in connection with a commercial activity of [Israel] elsewhere," specifically, Bolivia.  (See D.E. 32 at 9.)

The Court finds that Plaintiff has not carried his burden of establishing that IMI was conducting "commercial activity" in the United States.  As explained in the Court's Dismissal Order, Plaintiff's causes of action arise from contracts between Plaintiff, a Bolivian citizen, and IMI, an entity or instrumentality of the Israeli government, that were negotiated and executed in Bolivia and Israel contemplating the performance in Bolivia for the sale of rifles manufactured in Israel.  (See Compl. ¶¶ 1-2, 6-7, 9, 12-16, 19, 23, 28; Representative Agreement, D.E. 31-3 at 84; Decl. of Reuven Wolfe, D.E. 31-1 ¶¶ 6-

---

Plaintiff and the Bolivian military.  See Vermeulen, 985 F.2d at 1545.  Indeed, Plaintiff does not allege that any communication or negotiation of legal significance occurred in or otherwise affects the United States.  IMI could never have anticipated being haled into Court here over its contracts with the Bolivian government, and therefore the Due Process Clause does not permit this Court to exercise personal jurisdiction over IMI under the FSIA.  Vermeulen, 985 F.2d at 1545.
      Finally, to the extent it is applicable to whether the Court may exercise general personal jurisdiction over IMI under the FSIA, the Court finds—as it did in its original Dismissal Order—that IMI's contacts with the United States are not so continuous and systematic as to render IMI "comparable to a domestic enterprise" here.  Daimler AG v. Bauman, __ U.S. __, 134 S. Ct. 746, 751 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)); see also Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1204 (11th Cir. 2015) ("'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations,' without offending due process 'when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'") (quoting Goodyear, 131 S. Ct. at 2851).

8; Decl. of Amiram Maor, D.E. 31-1 ¶¶ 4-6; Telchi Dep. at 56:14-22 ("Q. Who on IMI's side did you negotiate this contract with?  A. Amiram Maor.  Q. Where was Mr. Maor located?  A. Tel Aviv.  Q. Who signed the agreement on behalf of IMI?  A. Mr. Maor."). The Contracts do not contemplate, much less require, any commercial activity to be performed in the United States.  (See Representative Agreements, D.E. 31-3 at 84-94.)

Plaintiff did not travel outside of Bolivia in connection with the work he performed for IMI pursuant to the Contracts.  (Telchi Dep. at 57:14-17.)  All quotes, proposals, product pricing, and contract negotiations and execution related to Plaintiff's work for IMI in Bolivia had to be conducted by IMI in Israel.  (Id. at 19:18-23, 20:15-20, 31:18-22, 70:8-15.)  The negotiations for the Galil Contract were conducted by multiple employees of IMI in Israel who traveled to Bolivia to negotiate the agreement with the Bolivian government, and any travel that Plaintiff did related to the negotiation of the Galil Contract was only to Israel.  (Id. at 28:17 – 29:18; 30:8-25.)

The IMI products Plaintiff sold were manufactured in Israel and were to be sent by IMI in Israel directly to Plaintiff in Bolivia for delivery to the Bolivian military.  (Id. at 23:18-22.)

Plaintiff's argument that personal jurisdiction over IMI exists due to the presence of Haim Geri in Miami, Florida beginning in the late 1990s is unpersuasive.  Geri was never an employee of IMI during the time he was living in Miami, and he did not have the authority to incur any financial or other obligation on behalf of IMI. (Geri Decl. ¶¶ 3-4; Geri Dep. at 40:13-16; Letter from Nissim Mor, IMI's Vice President of Marketing, to U.S. Department of Justice, D.E. 31-3 at 3 (Oct. 5, 1997), D.E. 46-1 at 2; IMI Marketing

11

Memo, D.E. 46-3 at 3; Advisor Agreement, D.E. 46-5 at 13 ¶¶ 6.1-6.4.)  During the time that Geri lived in Miami, all the work he performed for IMI was directed through IMI's office in Bogota or IMI's Latin America desk in Israel.  (IMI Marketing Memo, D.E. 31-3 at 8.)  Plaintiff and Geri never met in the United States for the specific purpose of discussing IMI's business in Bolivia.  (Geri Dep. 22:23 – 23:1, 30:21 – 31:6, 33:16-24, 77:5-8; Geri Decl. ¶ 9.)  Any discussion of IMI business while Plaintiff was in Miami was incidental.  (Geri Decl. ¶ 9.)  Any trips that Plaintiff made to Miami were personal trips, trips related to Plaintiff's other businesses, or for the purpose of connecting from Bolivia to Israel.  (Id. at 77:9-22; Telchi Dep. 40:14-25, 45:3-5; Teclhi Decl. ¶ 8; Geri Decl. ¶9.)

     Plaintiff now argues that the Court made a mistake of fact in its Dismissal Order regarding its consideration of whether IMI is subject to the Court's general personal jurisdiction.  (Mot. at 5-7.)  Specifically, the Court noted that "[b]eginning in 1999, Geri's Latin America-related activities for IMI were conducted through IMI's Bogota, Colombia office.  Accordingly, IMI prohibited correspondence with Geri in Miami, and required all correspondence with Geri to be conducted via email or fax to the Bogota office."  (Dismissal Order at 5 (citing IMI Marketing Memo, D.E. 31-3 at 8); see also id. at 10-11.)  Plaintiff argues that evidence in the record shows that the Bogota office was closed in 1999.  (Mot. at 6 (citing Geri Dep. at 40:6-16).)  Plaintiff argues that this, along with the evidence that Geri lived in Miami, suggests that Geri's work for IMI was coming directly from Miami, subjecting IMI to jurisdiction here.  (Id. at 6-7.)

12

The evidence in question is a memorandum drafted on January 5, 1999, by Ami Maor, IMI's Marketing Manager for Latin America. (D.E. 31-3 at 8.) It states, in relevant part, that: (1) "Geri will continue to live in Miami, but his business address will be the office in Bogota, and he will conduct his Latin America-related activities from there"; and (2) "it is prohibited to send faxes or mail on IMI subjects to Mr. Geri in Miami. The correspondence will be conducted via e-mail, the fax of the mission in Bogota or via the desk." (Id.) IMI explains, and Plaintiff does not dispute, that "the desk" is IMI's Latin America desk in Israel. (Resp. at 12.) Thus, assuming arguendo that the Bogota office did close sometime later in 1999, Plaintiff has not carried his burden of establishing that IMI was thereafter engaging in commercial activity in the United States such that it is subject to jurisdiction in the United States.

Indeed, even when Geri lived in Miami he very rarely worked from there; rather, Miami was chosen because Miami International Airport had the best international connections. (Geri Dep. at 12:21-13:3; 15:7-13.) Geri's Advisor Agreement with IMI obliged him to provide advisory services at IMI offices, facilities, or plants, or those of IMI customers in Latin America. (Advisor Agreement (D.E. 46-5 at 12) ¶ 4.1.)

Significantly, Plaintiff has not shown that any work that Geri actually did from Miami constitutes "commercial activity." That is, he has not shown that Geri performed in Miami "either a regular course of commercial conduct or a particular commercial transaction or act," 28 U.S.C. § 1603(d)—i.e., "the type of actions by which a private party engages in 'trade and traffic or commerce[.]'" Republic of Argentina, 504 U.S. at 614 (quoting Black's Law Dictionary 270 (6th ed. 1990)). To the contrary, the evidence

13

establishes that Geri did not have the authority to incur any financial or other obligation on behalf of IMI. (Geri Decl. ¶¶ 3-4; Geri Dep. at 40:13-16; Letter from Nissim Mor, IMI's Vice President of Marketing, to U.S. Department of Justice, D.E. 31-3 at 3 (Oct. 5, 1997), D.E. 46-1 at 2; IMI Marketing Memo, D.E. 46-3 at 3; Advisor Agreement, D.E. 46-5 at 11-20.) Geri's Advisor Agreement with IMI only permits him to provide "advice" or "advisory services," and only permits him to render such advice "<u>after</u> the signing of a sale agreement or sale agreements between [IMI] and [IMI] clients in Latin America." (Advisor Agreement, (D.E. 46-5 at 12) ¶ 4.4 (emphasis added.)

Based on the foregoing, the Court finds that Plaintiff has failed to establish that IMI was engaged in commercial activity in the United States for purposes of stripping IMI of sovereign immunity under 28 U.S.C. § 1605(a)(2). Therefore, the Court lacks subject matter jurisdiction under 28 U.S.C. § 1330(a) and lacks personal jurisdiction under 28 U.S.C. § 1330(b).

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Relief from the Court's Order Granting Renewed Motion to Dismiss Complaint is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 14th day of October, 2016.

*Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**
